**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
FRANK CAMERA, Executor of the :    Civ. No. 3:18CV01595(SALM)
Estate of Patrick Camera      :
                              :
v.                            :
                              :
CARY FRESTON, et al.          :    February 24, 2022
                              :
------------------------------x
```

<u>**RULING ON MOTION IN LIMINE [Doc. #113]**</u>

Defendants Dr. Cary Freston, Dr. Ricardo Ruiz, Dr. Smyth, Dr. Monica Farinella, and Dr. Syed Naqvi ("defendants") have filed a motion <u>in limine</u> requesting that the Court preclude certain exhibits and arguments submitted by plaintiff in opposition to defendants' motion for summary judgment. [Doc. #113]. Plaintiff Frank Camera, Executor of the Estate of Patrick Camera ("plaintiff"), has filed an objection to defendants' motion [Doc. #117], to which defendants have filed a reply [Doc. #118]. For the reasons stated below, defendants' Motion <u>in Limine</u> to Strike Certain Exhibits and Arguments Made in Plaintiff's Summary Judgment Opposition Filings [**Doc. #113**] is **GRANTED.**

I.   <u>**Background**</u>

Plaintiff brings this action against defendants asserting claims for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments to the United

States Constitution. See generally Doc. #51. The allegations of the Amended Complaint relate to the medical treatment, or lack thereof, provided to plaintiff's now-deceased brother, Patrick Camera ("Mr. Camera"), while Mr. Camera was housed in Department of Correction ("DOC") facilities. See generally id. In relevant part, plaintiff alleges that defendants were deliberately indifferent to Mr. Camera's serious medical needs such that the diagnosis of Mr. Camera's nasopharyngeal carcinoma was significantly delayed leading to a poor prognosis, and ultimately to Mr. Camera's untimely death. See generally id.

On June 1, 2021, defendants filed a motion for summary judgment as to each of plaintiff's remaining claims. See Doc. #98. After requesting, and receiving, two extensions of time, plaintiff filed his objection to defendants' motion on September 30, 2021. See Docs. #102, #104, #107.[1] Along with plaintiff's objection and Local Rule 56(a)(2) statement, plaintiff filed 39 exhibits. See Doc. #108. One of those exhibits is a videotaped interview of Mr. Camera by his attorneys, and another is a written transcript of that interview. See Doc. #108-22, Doc. #108-23 (hereinafter "Exhibits 22 and 23"). The interview was conducted on March 2, 2019, just seven days before Mr. Camera's death. See Doc. #108-22 at 1; Doc. #51 at 2, ¶4. Mr. Camera was

---

[1] This case was transferred to the undersigned on October 18, 2021. [Doc. #112].

not placed under oath for the interview. Defense counsel was not present.

On November 13, 2021, defendants filed the motion in limine now at issue. [Doc. #113]. Defendants "move to preclude the Court from considering Plaintiff's Exhibits 22 and 23, as well as portions of Plaintiff's Exhibit 7, on hearsay grounds." Doc. #113 at 1.[2] Defendants also "move to preclude the Court from considering character evidence of the defendants." Id. Plaintiff has objected to this motion asserting, inter alia, that the challenged evidence is "admissible, and should be considered with Plaintiff's objection to summary judgment." Doc. #117 at 1.

## II.  **Applicable Law**

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (citation and quotation marks omitted). "[H]earsay that would not be admissible at trial is likewise not competent evidence on a motion for summary judgment[.]" Fleming v. MaxMara USA, Inc., 644 F. Supp. 2d 247, 259 n.9 (E.D.N.Y. 2009), aff'd, 371 F. App'x 115 (2d Cir. 2010).

Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented

---

[2] Exhibit 7 is the Affidavit of Cathy Camera, Mr. Camera's "partner[.]" Doc. #108-7 at 1.

in a form that would be admissible in evidence." Fed. R. Civ. P. 56(a)(2). The advisory committee notes to Rule 56 further explain that "the objection functions much as an objection at trial, adjusted for the pretrial setting[.]" Tzanetis v. Weinstein & Riley, P.S., No. 3:09CV00413(DJS), 2010 WL 3925250, at *1 (D. Conn. Sept. 28, 2010) (citation and quotation marks omitted). Here, plaintiff "bears the burden of establishing the admissibility of evidence on which []he seeks to rely in opposing summary judgment." Batoh v. McNeil-PPC, Inc., 167 F. Supp. 3d 296, 309 (D. Conn. 2016); see also Tzanetis, 2010 WL 3925250, at *1 ("[T]he burden is on the proponent [of the evidence] to show that the material is admissible as presented or to explain the admissible form that is anticipated." (citation and quotation marks omitted)).

## III. **Discussion**

Defendants contend that when deciding the pending summary judgment motion, the Court should preclude from its consideration certain exhibits because they constitute either inadmissible hearsay or inadmissible character evidence. See generally Doc. #113. The Court first considers the hearsay-related arguments.

### A.   Hearsay

The Federal Rules of Evidence define "Hearsay" as "a statement that: (1) the declarant does not make while testifying

at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). "Hearsay is not admissible unless" a Federal Rule of Evidence, a federal statute, or a rule prescribed by the Supreme Court "provides otherwise[.]" Fed. R. Evid. 802; see also United States v. Carneglia, 256 F.R.D. 384, 391 (E.D.N.Y. 2009) ("Any statement that is made by a declarant not testifying at trial, offered in evidence to prove the truth of the matter asserted, is excluded as hearsay absent applicability of one of the hearsay exceptions provided in the Federal Rules of Evidence or a relevant statute.").

    1.   Exhibits 22 and 23

    Defendants assert that Exhibits 22 and 23, a recorded interview of Mr. Camera by his attorneys and a transcript of that interview, are inadmissible hearsay, do not qualify for the "dying declaration" exception, and should be precluded by the Court. See generally Doc. #113 at 2-7; Doc. #118 at 1-5. Plaintiff contends that these exhibits qualify under the "dying declaration" exception, and even if they do not, the exhibits are admissible under the residual exception to the hearsay rule. See generally Doc. #117 at 1-19. The Court first considers whether these exhibits qualify for the "dying declaration" exception.

a.   Rule 804(b)(2)

"In ... a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances[]" is "not excluded by the rule against hearsay if the declarant is unavailable as a witness[.]" Fed. R. Civ. P. 804(b)(2). "[T]he 'dying declaration' ... exception[] to the hearsay rule [is] based on the belief that persons making such statements are highly unlikely to lie." Idaho v. Wright, 497 U.S. 805, 820 (1990). In recent years, however, courts have grappled with the reliability of dying declarations, finding that they "are often not reliable." Carneglia, 256 F.R.D. at 394 ("The lack of inherent reliability of deathbed statements has often been pointed out. Experience suggests that the desire for revenge or self-exoneration or to protect one's loved ones may continue until the moment of death." (citation and quotation marks omitted)).

Defendants assert that Mr. Camera's interview does not qualify for the Rule 804(b)(2) exception because: (1) "plaintiff has not demonstrated that Camera was under the belief that his death was 'imminent' at the time of these statements[,]" Doc. #113 at 4; and (2) "the statements made by Camera in this interview do not relate to the 'cause or circumstances' of his perceived impending death[,]" id. at 5. Plaintiff, relying primarily on out of Circuit authority, contends that at the time

of the interview, Mr. Camera was "squarely in the realm of consciousness of death, thus meeting the first portion of the test of dying declaration." Doc. #117 at 3; see also id. at 3-17. As to the second prong, plaintiff contends that the Court may "excerpt the portions of the dying declaration that relate directly to the cause and circumstances of Mr. Camera's death." Id. at 9.

The interview with Mr. Camera is not a dying declaration. During the interview, Mr. Camera does not state, or even suggest, his belief that death was "imminent." As the Supreme Court stated nearly 90 years ago: "The patient must have spoken with the consciousness of a swift and certain doom." Shepard v. United States, 290 U.S. 96, 100 (1933). The transcript of Mr. Camera's interview does not reflect that Mr. Camera believed his death was "imminent;" rather, he simply acknowledged the terminal nature of his illness. See Doc. #108-22 at 28:16-29:12.[3] Plaintiff essentially concedes as much in his briefing: "[T]he entire picture of Mr. Camera's circumstances in 60 West demonstrate he knew he was dying." Doc. #117 at 7. Yes, Mr. Camera knew he was dying. However, plaintiff utterly fails to demonstrate that Mr. Camera believed his death was imminent.

---

[3] Citations to the transcript cite to the page numbers of the transcript and not to the page numbers reflected in the ECF document header. Otherwise, citations to all other documents reflect the page number in the ECF document header.

This is an important distinction given the rationale behind the exception plaintiff seeks to invoke: that people who are facing a "swift and certain" death are less likely to lie. Shepard, 290 U.S. at 100;  see also Wright, 497 U.S. at 820 ("The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." (citation and quotation marks omitted)).

Additionally, one portion of the interview offers Mr. Camera's small glimmer of hope during an otherwise tremendously grim time. Plaintiff's counsel asked Mr. Camera: "Do you ever think that you'll be able to walk again?" to which Mr. Camera responded: "I hope so." Doc. #108-22 at 33:7-9. "Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be a settled hopeless expectation that death is near at hand, and what is said must have been spoken in the hush of its impending presence." Shepard, 290 U.S. at 100 (citation and quotation marks omitted).

There is simply no indication in the interview, or otherwise, that Mr. Camera believed his death was imminent on March 2, 2019.[4] See Shepard, 290 U.S. 96 at 100. ("What is

---

[4] Mrs. Camera states in her affidavit: "On March 2, 2019, Patsy knew his death was a matter of weeks away, if not days away."

decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture."). Indeed, Mr. Camera did not die until seven days <u>after</u> the interview. Accordingly, plaintiff has not established that Exhibits 22 and 23 qualify for the dying declaration exception set forth in Rule 804(b)(2). <u>See</u> <u>S.E.C. v. 800america.com, Inc.</u>, No. 02CV09046(HB), 2006 WL 3422670, at *4 (S.D.N.Y. Nov. 28, 2006) (dying declaration exception did not apply where declarant "neither stated that he believed that his death was imminent, nor that he believed that Steeples' actions were the direct or indirect cause of his death[]"); <u>compare</u> <u>Carneglia</u>, 256 F.R.D. at 394 (statement admitted as dying declaration where, while in transit to the hospital after having been stabbed, declarant described his attacker to a police officer and stated "I'm not going to make it."); <u>United States v. Velentzas</u>, No. 91CR00384(DRH), 1993 WL 37339, at *1-2 (E.D.N.Y. Feb. 5, 1993) (murder victim's statements admitted as dying declaration where victim provided description of assailant and "repeatedly stated that he was dying[]").

---

Doc. #108-7 at 7. This also does not satisfy Rule 804(b)(2)'s requirement that the declarant believe that his death was "imminent."

b.   Rule 807

Alternatively, plaintiff asserts that Exhibits 22 and 23 may be admitted under the residual exception to the hearsay rule. See Doc. #117 at 17-19. Defendants assert that plaintiff has waived this argument because it was not asserted in the summary judgment briefing, but nevertheless, the Court should reject this argument because "Exhibits 22 and 23 clearly do not meet the requirements of Rule 807." Doc. #118 at 5.

The residual exception is to "be used very rarely, and only in exceptional circumstances." Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (citation and quotation marks omitted). Rule 807 provides:

> Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
> (1) the statement is supported by sufficient guarantees of trustworthiness -- after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a)(1)-(2).

> Rule 807 permits admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party.

United States v. Dawkins, 999 F.3d 767, 791 (2d Cir. 2021) (footnote, citation, and quotation marks omitted). "For the residual exception to apply, all of those requirements must be satisfied." Gem Fin. Serv., Inc. v. City of New York, No. 13CV01686(RPK)(RER), 2022 WL 409618, at *5 (E.D.N.Y. Feb. 10, 2022). "The most important requirement of Rule 807 is that the hearsay evidence have circumstantial guarantees of trustworthiness that are equivalent to those reflected in the other hearsay exceptions." Batoh, 167 F. Supp. 3d at 311 (citation and quotation marks omitted). "The proponent of the statement[,]" here plaintiff, "bears the burden of establishing that the statement is especially trustworthy." Id.

"The first requirement [of Rule 807] is that the proffered hearsay evidence must have circumstantial guarantees of trustworthiness equivalent to those that justify hearsay testimony under the other hearsay exceptions." United States v. Mejia, 948 F. Supp. 2d 311, 316 (S.D.N.Y. 2013). "In assessing the trustworthiness of a statement for purposes of Rule 807, a court should be mindful of the four classes of risk peculiar to hearsay evidence: those of (1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration." Lasnick v. Morgan, No. 3:10CV00345(JCH), 2011 WL 6300159, at *2 (D. Conn. Dec. 15, 2011) (citation and quotation marks omitted). When assessing the admissibility of evidence under the residual

exception, "district courts should view the evidence in context." <u>United States v. Hill</u>, 658 F. App'x 600, 603 (2d Cir. 2016) (citation and quotation marks omitted).

Plaintiff asserts that "Mr. Camera's final statements contains significant indicia of reliability, or, ... circumstantial guarantees of trustworthiness." Doc. #117 at 18 (sic). Considering the context in which Mr. Camera's statement was made, the Court disagrees. First, Mr. Camera's statement was not made under oath, and was in response to questions posed by his attorney. <u>See generally</u> Doc. #108-22. Mr. Camera's partner often interjected during the interview to clarify certain points. <u>See</u> <u>id.</u> The statement appears to have been "created for the purpose of advancing plaintiff's interests during this litigation," and therefore poses the "risk that [Mr. Camera] was insincere." <u>Gem Fin. Serv.</u>, 2022 WL 409618, at *5; <u>see also</u> <u>Batoh</u>, 167 F. Supp. 3d at 311 (Even the "suggestion that the statement was made in the context of conversations about possible litigation" is "a suggestion of untrustworthiness."); <u>Greco v. Nat'l R.R. Passenger Corp.</u>, No. 02CV06862(RBS), 2005 WL 1320147, at *7 (E.D. Pa. June 1, 2005) ("When a family member seeks to admit hearsay statements made by the decedent prior to his death in order to establish the cause of his injury, such statements are inherently unreliable."); <u>Coleman v. Durkin</u>, No. 9:18CV00390(MAD)(CFH), 2022 WL 446200, at *5 (N.D.N.Y. Feb. 14,

2022) ("[P]erhaps most importantly, Grey's statement was not made under oath or subject to cross-examination. Therefore, the Court does not find that there are 'exceptional circumstances' here such that admitting this evidence under Rule 807 is warranted.").[5] Even presuming that Mr. Camera had no reason to lie, "having no reason to lie does not amount to a circumstantial guarantee of trustworthiness." Batoh, 167 F. Supp. 3d at 312 (citation and quotation marks omitted).

Additionally, the substance of Mr. Camera's interview reflects that, as a result of his progressive disease, he was suffering from some memory-related issues. See generally Doc. #108-22. Plaintiff concedes as much in his briefing, specifically identifying instances in which Mr. Camera inaccurately recounted a detail during the interview. See Doc. #117 at 16-17. Although plaintiff asserts such deficiencies can be "corrected by the DOC's own records[,]" this does not remove the taint of unreliability from the entirety of Mr. Camera's statement. Id. at 16.

Accordingly, given the context and circumstances in which Mr. Camera's statement was made, the interview does not "have circumstantial guarantees of trustworthiness equivalent to those

---

[5] Even the videographer was not a neutral party, but apparently is the brother-in-law of Attorney Krayeske. See Doc. #108-22 at 3:10-16.

that justify hearsay testimony under the other hearsay exceptions." Mejia, 948 F. Supp. 2d at 316; see also Metro. Enter. Corp. v. United Techs. Int'l., No. 3:03CV01685(JBA), 2006 WL 798870, at *3 (D. Conn. Feb. 28, 2006) (The Court did not admit an exhibit under the residual exception where the exhibit "does not meet the test of trustworthiness. The letter was not prepared contemporaneously with the events in question. It was prepared at least in part by a party, David Liu, who has an interest in the outcome of this case. The author of the letter was not under oath and will not be available for cross examination."). Given this conclusion that Mr. Camera's statement does not meet the test of trustworthiness, the Court need not consider the other Rule 807 factors.

Thus, for the reasons stated, Mr. Camera's recorded interview and the written transcript of that interview are not admissible, and the Court will not consider those exhibits when ruling on defendants' motion for summary judgment.[6]

---

[6] Given that plaintiff has the ultimate burden to prove the merits of this case, the Court is surprised that plaintiff's counsel did not preserve Mr. Camera's testimony by a sworn deposition or written statement, given the terminal and progressive nature of Mr. Camera's illness. As Judge Michael P. Shea noted in a case presenting similar circumstances: "There are steps that can be taken to avoid [the exclusion of the decedent's statements] — such as noticing and taking the deposition of a plaintiff or potential plaintiff where there is a risk that he or she will perish before trial." Batoh, 167 F. Supp. 3d at 313 n.13.

2.   *Exhibit 7*

Defendants next contend that portions of Exhibit 7, the affidavit of Mrs. Camera, contain hearsay and are inadmissible. See Doc. #113 at 7. Defendants specifically assert that the following paragraphs of Mrs. Camera's affidavit contain inadmissible hearsay and should not be considered by the Court: 12 through 15; 18; 19; 21; 22; 21; and 36. See id.; see also Doc. #108-7. Plaintiff contends that these paragraphs "should qualify as admissible evidence under FRE 803(3), the then existing mental, emotional or physical condition. Plaintiff ... does not submit them for the truth of the matter, but to show his brother's then-existing physical and mental conditions." Doc. #117 at 19. Defendants contend in reply that when these paragraphs are viewed in the context of the Local Rule 56 statements, that they are "clearly being used for the truth of the matter asserted." Doc. #118 at 8; see also id. at 9.

Plaintiff relies on paragraph 19 of Mrs. Camera's affidavit to deny the statements of material fact contained in paragraphs 55 and 59 of defendants' Local Rule 56(a)(1) statement. See Doc. #107-1 at 16-17. Paragraph 19 of the affidavit states, in pertinent part: "When Pat told me he complained to Dr. Smyth about his [protruding eye and headache] symptoms and Dr. Smyth said nothing was wrong, maybe a sty or a cyst, I asked him if the Doctor was crazy, because it was clear to me Pat's eye was

protruding. I could not believe that the eye doctor thought there was nothing wrong." Doc. #108-7 at ¶19 (sic).

Plaintiff contends that this statement is offered not "for the truth of the matter, but to evidence Cathy Camera's reaction, and why she though the doctor was crazy[.]" Doc. #117 at 21. Accordingly, plaintiff asserts this statement "should be admitted to show she considered her partner's problem objectively serious, and could not grasp why other people were not taking his protruding eye seriously." Id. A review of plaintiff's denials of paragraphs 55 and 59 belies the proffered basis for this statement.

Paragraph 55 states: "On October 5th, Mr. Camera presented with a chief complaint of decreased vision and that he needed glasses for reading, and also indicated his current medications and that he was being seen by Dr. Freston for allergies and a sinus infection." Doc. #107-1 at 16, ¶55. Plaintiff "denies" this statement "in so far that Mr. Camera's chief complaint was decreased vision. Mr. Camera had a protruding eyeball." Id. In support of that denial, plaintiff relies on several paragraphs of Mrs. Camera's affidavit, including paragraph 19, in which she states that Mr. Camera "told" her that "he complained to Dr. Smyth about his symptoms[.]" Doc. #108-7 at 4. Accordingly, this paragraph is in fact being offered for the truth of the matter asserted, and is inadmissible for that purpose.

Similarly, paragraph 59 states: "During this October 5th encounter, Dr. Smyth did not notice anything out of the ordinary in Mr. Camera's presentation, nor did Mr. Camera voice any complaints concerning his sinuses other than mentioning that he was being seen by Dr. Freston." Doc. #107-1 at 17, ¶59. "Plaintiff denies that Mr. Camera did not voice any complaints about his condition." Id. Again, in support of this denial, plaintiff relies on paragraph 19 of Mrs. Camera's affidavit. Thus, paragraph 19 is again being offered for the truth of the matter asserted, and is inadmissible for that purpose.[7]

Defendants also contend that plaintiff inappropriately relies on portions of Mrs. Camera's affidavit to support several additional material facts asserted. See Doc. #113 at 8, n.3-4; Doc. #118 at 9.

---

[7] Plaintiff also relies on paragraph 19 of Mrs. Camera's affidavit to support the assertion of additional material facts that: "Cathy Camera remembers Pat Camera telling her Dr. Smyth told him it was a cyst or a sty, and she remembers thinking that Dr. Smyth was crazy because it was clear to her that Pat's eye was protruding from his face." Doc. #107-1 at 136, at ¶188 (sic). Plaintiff contends this is not being offered "for the truth of the matter, but to evidence Cathy Camera's reaction," and "to show she considered her partner's problem objectively serious[.]" Doc. #117 at 21. It is unclear just how "objective" Mr. Camera's long-term partner could be under these circumstances. Regardless, to the extent this is being offered for a relevant non-hearsay purpose, if the Court relies on this statement in its summary judgment ruling, the Court will explicitly state a basis for its admissibility.

Paragraph 150 states: "Patrick Camera regularly told Brett Rosenberg about his bloody noses." Doc. #107-1 at 44, ¶150. Paragraph 155 states, in pertinent part: "Cathy Camera said Pat told her he would go to Brett Rosenberg regularly and complain of his health problems, and medical records do not contain evidence of these visits." Id. at 24, ¶155. In support of these facts, plaintiff cites to paragraph 12 of Mrs. Camera's affidavit, which states: "Pat told me he would complain to Brett regularly, and Brett would often just send Pat back to his room and tell him there as nothing he could do. As Pat's nose bleeds became more frequent, less was being done." Doc. #108-7 at ¶12. Paragraph 12 of the affidavit is not being offered to demonstrate "how [Mr. Camera] felt physically and his state of mind[.]" Doc. #117 at 21. Rather, it is readily apparent that plaintiff offers paragraph 12 for the truth of the matter asserted, which is impermissible.

As to the other contested paragraphs of Mrs. Camera's affidavit, plaintiff does not rely on those paragraphs to deny material facts, or to support additional material facts. See generally Doc #107-1. Accordingly, in light of the relief requested by defendant, the Court does not address these remaining paragraphs further. See Doc. #113 at 8.

The Court will not consider the inadmissible hearsay contained in Mrs. Camera's affidavit when ruling on defendants'

motion for summary judgement. Accordingly, defendants' motion in limine is **GRANTED** in that regard.

    B.   Character Evidence

    Finally, defendants request that the Court not consider propensity character evidence offered by plaintiff. See Doc. #113 at 8.

    "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, "[e]vidence of any other ... wrong, or act[] ... may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2); accord United States v. Rankin, No. 3:18CR00272(JAM), 2021 WL 5049354, at *1 (D. Conn. Oct. 31, 2021). Additionally, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406.

    In his objection to defendants' motion for summary judgment, plaintiff "moves to consider habit and practice evidence against Dr. Freston as a bad doctor." Doc. #107 at 45. Defendants assert that this is "clearly propensity character evidence that is

plainly excluded under Rule 404[.]" Doc. #113 at 8. Plaintiff responds, in pertinent part, that the evidence is admissible because it demonstrates "Dr. Freston had the knowledge of what it was to practice bad medicine with Patrick Camera[,]" and "evidences an absence of mistake or accident." Doc. #117 at 23. Similarly, plaintiff contends that Dr. Naqvi's "litigation history and reprimand are admissible under the knowledge prong of FRE 404(b)[,]" because it: (1) "goes to show that Dr. Naqvi had the knowledge to understand what delayed medical care was, and to avoid providing delayed medical care[;]" and (2) "goes to the absence of mistake on Dr. Naqvi's part." Id. at 24.

As an initial matter, the evidence at issue is not admissible habit evidence. Cf. Rajaravivarma v. Bd. of Trustees for Conn. State Univ. Sys., 272 F.R.D. 315, 319 (D. Conn. 2011) ("A common-sense example of admissible habit evidence would be testimony that a person always holds the receiver with his right hand when speaking on the telephone."); see also Batoh, 167 F. Supp. 3d at 309 ("Difficulty arises in drawing the line between inadmissible character evidence and admissible habit evidence. For this reason, courts have been cautious in allowing evidence that attempts to prove a pattern of conduct as habit, because of the risk that such evidence will be used to establish a party's propensity to act in conformity with his general character[.]").

Additionally, a plain reading of plaintiff's opposition to the motion for summary judgment and his opposition to the motion in limine reflects that plaintiff seeks to introduce evidence that Dr. Freston and Dr. Naqvi are "bad doctors," which is plainly impermissible. Although plaintiff claims the evidence at issue is admissible to show knowledge or absence of mistake, his briefing suggests otherwise. See, e.g., Rajaravivarma, 272 F.R.D. at 319 (explaining a "proper use" of the exception set forth in Rule 404(b)(2)). Regardless, the Court will not consider impermissible 404(b) evidence when ruling on defendants' motion for summary judgment. However, because "[t]he Second Circuit follows an inclusionary approach to Rule 404(b)," the Court will consider "evidence that serves any non-propensity purpose, including state of mind." United States v. Meislin, 108 F. Supp. 3d 38, 44 (N.D.N.Y. 2015), aff'd sub nom. United States v. Kuthuru, 665 F. App'x 34 (2d Cir. 2016). To the extent the Court's ruling does rely on such "other purpose" evidence, that is relevant to the claims remaining in this case, the Court will specifically note the non-propensity purpose for which the evidence was considered.[8]

---

[8] Should the Court reach the merits of defendants' qualified immunity defense on summary judgment, any improper character evidence will not factor into the Court's consideration of that defense. See Doc. #117 at 22-23; Doc. #118 at 9-10.

**IV.   <u>Conclusion</u>**

For the reasons set forth herein, defendants' Motion <u>in</u> <u>Limine</u> to Strike Certain Exhibits and Arguments Made in Plaintiff's Summary Judgment Opposition Filings [**Doc. #113**] is **GRANTED.**

It is so ordered this 24th day of February, 2022, at New Haven, Connecticut.

<pre>
        /s/
_____
SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
</pre>